IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BENJAMIN FETTKETHER,<br><br>　　　　Plaintiff/Counter-<br>　　　　defendant,<br><br>vs.<br><br>PROGRESSIVE NORTHWESTERN<br>INSURANCE COMPANY,<br><br>　　　　Defendant/Counter<br>　　　　claimant. | CV 23-18-BLG-SPW<br><br><br>ORDER |

Before the Court is Plaintiff Benjamin Fettkether's Motion for Attorney Fees (Doc. 29) and Defendant Progressive Northwestern Insurance Company's Motion for Relief and Reconsideration pursuant to Federal Rule of Civil Procedure 60(b) (Doc. 33). For the following reasons, the Court grants Plaintiff's motion and denies Defendant's motion.

## I.　Background

The facts of this case are detailed at length in the Court's order on summary judgment. (Doc. 27). In short, Plaintiff was the passenger in a UTV when it rolled, causing physical injury to Plaintiff. (Doc. 27 at 2). Plaintiff sued the driver, who was insured by Defendant, and demanded Defendant tender the $25,000 bodily injury limit contained in the driver's insurance policy. (*Id.* at 3). Progressive refused to defend the driver and tender the bodily injury limit. (*Id.*; Doc. 12 ¶ 5). The driver

1

entered a confession of judgment for $1.6 million and assigned Plaintiff his rights under his auto insurance policy with Defendant. (Doc. 27 at 4).

Plaintiff then sued Defendant in this Court, seeking a declaration that Defendant breached its duty to defend the driver. (*Id.* at 5). The parties filed cross motions for summary judgment, (Docs 16, 19), and the Court held Defendant had a duty to defend, which it breached, (Doc. 27 at 17–18). The Court further held Defendant was "bound to pay the $1.6 million Confession of Judgment plus interest and attorney fees and costs." (*Id.* at 18).

Plaintiff then moved for attorney fees, and Defendant moved for relief from judgment and for reconsideration. (Docs. 29, 33).

As relevant to the Motion for Relief from Judgment, at the time of summary judgment, the parties only filed and referenced in briefing a letter sent on December 9, 2021, by Defendant to the driver denying coverage and a corresponding letter sent by Defendant to Plaintiff's counsel on the same day confirming the denial of coverage. (Docs. 18-3, 18-4). Unknown to the Court, Defendant had sent a letter on October 20, 2021, to Plaintiff's counsel rejecting the demand from Plaintiff for Defendant to tender the $25,000 bodily injury limit. (Docs. 34-1 (hereinafter "Demand Letter"), 34-2 (hereinafter "First Denial Letter")). Neither the Demand Letter nor First Denial Letter were originally filed. In the parties' narratives of the

demand and rejection letter, neither mentioned nor were framed as an exchange of letters. (*See* Doc. 12 ¶ 5; Doc. 14 at 2).[1]

Defendant's counsel stated in his affidavit that he "mistakenly assumed" the Demand Letter and First Denial Letter "had been formally placed in the record during the pretrial process." (Doc. 34 ¶ 9). He does not state a reason why the letters were not placed in the record, including in his own statement of undisputed facts, despite his belief that they were. Rather, he explains that he reviewed the First Denial Letter and the December 9, 2021, letter  (Doc. 18-3 (hereinafter "Second Denial Letter) and found them substantively similar." (*Id.* ¶ 12). He also stated that he "relied upon the second denial letter to support Progressive's summary judgment motion." (*Id.*).

## II.    Motion for Relief from Judgment

Under Rule 60(b), the Court may relieve a party from a final judgment, order, or proceeding for:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

---

[1] Neither Defendant's Statement of Undisputed Facts nor Plaintiff's Statement of Disputed Facts mention the tender demand and denial. (Docs. 18, 21).

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

When a Rule 60(b) motion asks the Court to fix legal or factual errors in a judgment, the motion is characterized as a motion to reconsider. *Fails v. Harbaugh*, CV 17-120-BLG, 2019 WL 2517067, at *1 (D. Mont. June 18, 2019) (internal citation and quotation marks omitted). "While motions to reconsider are left to the discretion of the district court, they are also generally disfavored." *Id.* (internal citation and quotation marks omitted).

Defendant presents three bases for relief. First, Defendant argues it is entitled to relief because the Court erroneously held on summary judgment that Plaintiff was entitled to attorney fees. (Doc. 35 at 3). Second, Defendant asserts it is entitled to relief because its counsel's failure to file the First Denial Letter, which Defendant argues would change the outcome of the parties' summary judgment motions, was excusable neglect. (*Id.* at 5). Last, Defendant contends the Court made three other legal errors which the Court should remedy on reconsideration. (*Id.* at 10–14). The Court first will address the excusable neglect argument and the alleged legal errors, since reopening the portions of the judgment related to the duty to defend issue will impact whether Plaintiff can assert a claim for attorney fees.

### A.    Excusable Neglect

The parties first disagree whether the four-factor test expressed in *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010) only applies to excusable neglect cases where the movant requested relief because they missed a deadline, or in all excusable neglect cases.  Plaintiff argues the test only applies to missed deadline cases, and therefore not here, because the only cases that applied the four-factor test that Plaintiff could find involved missed deadlines or misconstruction of certain rules, not a failure to submit certain evidence.  (Doc. 39 at 5).  Defendant responds that its failure to submit an exhibit for review was inadvertence analogous to a "typical 60(b)(1) mistake[.]"  (Doc. 40 at 5).

The four-factor test referenced by the parties was articulated by the U.S. Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993).  *Pioneer* considered whether a bankruptcy court correctly refused to consider a late filing due to counsel missing a deadline under the excusable neglect provision of Federal Rule of Bankruptcy Procedure 9006(b)(1).  *Id.* at 384.  Because a circuit split existed over the meaning of "excusable neglect," the Court granted certiorari on the issue.  *Id.* at 387.  The Court adopted a "flexible understanding" of excusable neglect that permitted courts, "where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."  *Id.* at 389.  The Court

explained that this understanding of excusable neglect under the Bankruptcy Rules comported with its meaning in Federal Rule of Civil Procedure 60(b)(1). *Id.* at 394. The Court then articulated the four-factor test.

Four years later, in *Briones v. Riviera Hotel & Casino*, the Ninth Circuit held that "the equitable test set out in *Pioneer* applies to Rule 60(b) as well." 116 F.3d 379, 381 (9th Cir. 1997). This sentence does not limit the *Pioneer* test to motions based on missed deadlines. In another place in the opinion, though, the *Briones* court writes the *Pioneer* test "provide[s] a framework with which to determine whether *missing a filing deadline* constitutes 'excusable' neglect." *Id.* at 381 (emphasis added). Similarly, in *Bateman*, the Ninth Circuit wrote in one place that it "adopted the equitable test articulated in *Pioneer* to determine whether neglect is 'excusable' under Rule 60(b)(1)." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000). In another place, though, it quoted *Briones*'s statement that *Pioneer* provides the framework "to determine whether *missing a filing deadline* constitutes excusable neglect." *Id.* (emphasis added).

Like Plaintiff, the Court could not find another case in which a court considered whether failure to file evidence in a party's possession at the time the motions were filed and make arguments based on that evidence constituted excusable neglect. In the context of Rule 60(b), the absence of factually analogous cases filed pursuant to Rule 60(b)(1) makes sense because of the contours of Rule

60(b)(2). Rule 60(b)(2) allows the Court to grant relief from judgment when "(1) the moving party can show the evidence relied on in fact constitutes newly discovered evidence within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1136 (9th Cir. 2022). If the party was in possession of the evidence before judgment was rendered, it is not newly discovered and does not entitle the party to relief. 11 Mary Kay Kane, *Federal Practice and Procedure* § 2859 (3d ed. 2023); *Ursini v. The Menninger Found.*, 384 F. Supp. 158, 162 (E.D. Cal. 1974). Thus, Rule 60(b)(2) generally stands for the proposition that a party's decision not to make arguments based on evidence in its possession, let alone file that evidence, is not grounds for relief under Rule 60(b).

According to Defendant's counsel's affidavit, that was the case here. Defendant's counsel declared that he "relied upon the second denial letter to support Progressive's summary judgment motion." (Doc. 34 ¶ 12). That indicates a litigation choice—that the Second Denial Letter, not the first, adequately supported Defendant's position. The Court recognizes that Defendant's counsel also contends that he believed both were filed in the record, but that does not detract from the fact that Defendant chose to rely on the Second Denial Letter as the anchor for his

arguments, rather than the first. Thus, if the Court allows relief based on the first denial letter, which Defendant had possession of and reviewed (*Id.* ¶ 8), based on excusable neglect, the Court would be sidestepping the protections for a final judgment embedded in Rule 60(b)(2).

Still, the Ninth Circuit has not foreclosed the application of *Pioneer* in cases not involving a missed deadline. Thus, the Court will analyze whether relief from judgment based on excusable neglect is warranted under *Pioneer*. *See Ahanchian,* 624 F.3d at 1261 (quoting *Bateman,* 231 F.3d at 1224) ("The Ninth Circuit has stated that a court errs in failing 'to engage in the equitable analysis mandated by *Pioneer* and *Briones*[.]'").

Under *Pioneer,* whether a party's actions constitute excusable neglect depends on (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Id.* (citing *Pioneer* 507 U.S. at 395 and *Briones,* 116 F.3d at 381). The test "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer,* 507 U.S. at 395. Weighing *Pioneer's* equitable factors is left to the district court's discretion. *Pincay v. Andrews,* 389 F.3d 853, 860 (9th Cir. 2004) (en banc).

As to the prejudice factor, the prejudice to Plaintiff is moderate. "Prejudice requires greater harm than simply that relief would delay resolution of the case."

*Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009). Here, Plaintiff and Defendant filed cross motions for summary judgment that raised complicated factual and legal issues. Granting Defendant's motion thus would not be the reversal of a "quick but unmerited victory," which *Ahanchian* held would not result in prejudice to Plaintiff. 624 F.3d at 1262; *see also Bateman*, 231 F.3d at 1225 (finding prejudice minimal because the plaintiff sought relief from the district court's grant of an unopposed motion for summary judgment after the plaintiff missed the deadline to file an opposition brief). Additionally, unlike *Bateman* where vacating the judgment would result in the court setting a trial date because only one party filed a motion for summary judgment, vacating the judgment here could result in a trial date, the affirmation of the Court's previous judgment, or the entry of judgment in favor of Defendant. *See id.* Thus, the prejudice is more than just a delayed resolution; it could be a reversal of the Court's thorough consideration of the merits.[2] At the same time, the Court agrees with Defendant that Plaintiff's knowledge of the first denial letter reduces the prejudice. (*See* Doc. 35 at 6).

The length of the delay and its potential impact on the judicial proceedings carries a neutral weight on the Court's excusable neglect analysis. Defendant filed its Rule 60(b)(1) motion a little more than three weeks after the Court's order

---

[2] The Court had little guidance on how to apply the prejudice factor, since none of the cases it could find considered a Rule 60(b) motion after fully litigating the merits of a case. This difficulty may indicate the inapplicability of the *Pioneer* test.

denying Defendant's summary judgment motion and granting Plaintiff's summary judgment motion. (Doc. 33). This timeframe is less than the month-long delay *Bateman* found to be minimal. *Bateman*, 231 F.3d at 1225. At the same time, the parties' motions ripened at the end of August 2023, meaning Defendant had three months to realize that the First Denial Letter supported its position on summary judgment (or at least was important for the Court to consider) but was neither argued about in briefing nor filed. During those three months, the Court had asked for supplemental briefing, which gave Defendant an opportunity to re-engage with the record and realize the First Denial Letter was not filed. Instead, the trigger for Defendant to realize the First Denial Letter was not filed and was pertinent to the Court's analysis was the Court's unfavorable decision on summary judgment. *Cf. Chavira . U.S. Dep't of Edu.*, No. 19-cv-00538, 2022 WL 1082568, at *4 (E.D. Cal. Apr. 11, 2022) (allowing a party to file a declaration and exhibits it had forgotten to attach to its summary judgment motion under Rule 60(b)(1) where the party realized the oversight after it had filed its reply but before the court had ruled on the motion, the party's summary judgment arguments would not change with the additions, and the party had timely served on the other party the declaration and exhibits). Given

these competing circumstances surrounding delay, the Court finds this factor is neutral.[3]

As for Defendant's reason for delay, the Court is hard pressed to find its counsel's reason constitutes excusable neglect rather than a choice about his litigation strategy. Yes, Defendant's counsel thought the first denial letter was in the record, which could be construed as inadvertence or mistake. But more importantly, Defendant's counsel admitted he chose to rely on the Second Denial Letter rather than the first to support his summary judgment arguments. That deliberate choice is one that concerns litigation strategy, which cannot constitute excusable neglect. *See Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1101 (9th Cir. 2006) ("parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel. This includes ... an innocent, albeit careless or negligent, attorney mistake ...."); *Lozano v. Neovia Logistics Distrib., LP*, No. ED CV 20-1683, 2021 WL 6102422, at *4 (C.D. Cal. Nov. 9, 2021) ("Plaintiff's counsel's carefully chosen litigation strategy and tactics obviously failed and certainly do not support a claim of excusable neglect."). Defendant's counsel also contends that the letters were "substantively very similar," further

---

[3] Like with the prejudice factor, the caselaw on the length of the delay factor does not exactly fit with the facts of this case because the caselaw generally involves courts immediately ruling on dispositive motions as a result of a party not filing an opposition brief because they missed the deadline or misconstrued the rules. *See, e.g. Bateman*, 231 F.3d at 1222–23.

enforcing the notion that the absence of the first denial letter resulted from a litigation choice rather than excusable neglect. (Doc. 34 ¶ 8).

Even if the Court focuses only on the Defendant's counsel's failure to file the First Denial Letter, Defendant's counsel gives no specific reason for the First Denial Letter not being in the record other than his assumption that it was in the record. Thus, the Court has no basis on which to find that any neglect was excusable.

Last, as to whether Defendant acted in good faith, there is no evidence or accusation that Defendant acted in bad faith. This factor weighs in favor of granting relief.

Balancing the equities, the Court finds that excusable neglect does not exist here, and relief based on the absence of the First Denial Letter from the record is not warranted. Again, it appears that the absence of the first denial letter resulted from a strategy choice based on Defendant's counsel's assessment of the two denial letters. Looking to all the relevant circumstances, the Court finds the reason for the delay so heavily weighs against relief from judgment so as to warrant denying the motion.

## B.    Legal Errors

Defendant next argues the Court made three legal errors: (1) the Court incorrectly cited to the Complaint in this case rather than the complaint in the underlying case in assessing if Defendant had made an unequivocal demonstration

that policy coverage did not exist; (2) the Court incorrectly reversed the burden of proof; and (3) the Court incorrectly decided that Defendant had not unequivocally demonstrated that policy coverage did not exist based on the noted ambiguities.

A "mistake" in the context of Rule 60(b)(1) includes a judge's clear errors of law and fact. *Kemp v. United States*, 596 U.S. 528, 534 (2022). To demonstrate clear error, the moving party's arguments cannot be the same as those made earlier. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). *See also Fails*, 2019 WL 2517067 at *1 ("Disagreement with a Court's order is an insufficient basis for reconsideration, and such a motion should not be used to make new arguments or to ask the Court to rethink its prior analysis.").

First, the Court admits that it incorrectly cited to the present Complaint as opposed to the underlying complaint. However, this error does not warrant relief from judgment because the outcome does not change if it looks at the underlying complaint. The underlying complaint alleged a type of accident and resulting bodily injury that would be covered under the insurance policy. (Doc. 18-1 at 2 (describing how the operation of the UTV caused physical injury); Doc. 18-2 at 1–2, 11 (explaining that the policy covers bodily injury to others caused by the use of a covered auto)). This is sufficient because the insured only "bears the initial burden to establish that the claim falls within the *basic* scope of coverage." *Farmers Ins. Exch. v. Minemyer*, 532 P.3d 837, 845 (Mont. 2023) (emphasis added) (internal

citation and quotation marks omitted).  The basic scope of coverage here requires bodily injury to another caused by the insured in a vehicle owned by the insured. Litigating whether that vehicle is a Covered Auto under the policy extends beyond the "basic scope of coverage" inquiry.  Thus, because of the inconsequential nature of this error, the Court exercises its discretion to not afford Defendant relief from judgment.

Second, the Court rejects Defendant's contention that the Court reversed a burden of proof.  Again, the insured bears the initial burden to establish that the claim falls within the basic scope of coverage.  *Id*.  Only "[i]f there is no coverage under the terms of the policy based on the facts contained in the complaint" is there no duty to defend."  *Id*. (internal citation and quotation marks omitted).  As the Court explained in its initial order, an insured fails to meet its burden to show that coverage exists when the facts alleged in the complaint so obviously fall outside of the policy coverage, like when the policy was not in effect at the time of the accident.  (Doc. 27 at 11–12 (discussing *Huckins v. United Servs. Auto. Assoc.*, 396 P.3d 121, 123–128 (Mont. 2017))).  "If the insured meets the initial burden of showing that the claim falls within the basic scope of coverage, then the burden shifts to the insurer to show that the claim is unequivocally excluded under an exception within the coverage."  *Minemeyer*, 532 P.3d at 845.

The Court's holding on the issues presented by the parties provides examples of when a plaintiff does not meet and when a plaintiff does meet their initial burden. The Court found that Plaintiff did not meet his initial burden with respect to the motorcycle policy because the driver had purchased the motorcycle policy after the accident and so it was obviously not in effect at the time of the accident. (Doc. 27 at 4 n.2). With respect to the auto policy, though, the Court found that Plaintiff met his initial burden to show that the accident and his injury fell within the basic scope of coverage, so the burden then shifted to Defendant to make its unequivocal demonstration that no policy coverage existed. (*Id.* at 14 ("[N]ext, looking to the Complaint, Fettkether claims that his injuries stemmed from the operation of a Covered Auto. Thus, if proven, his claims would fall under the policy.")).[4] Whether the UTV is a Covered Auto is not so obvious an answer to preclude coverage when assessing if Plaintiff met his burden (let alone when assessing if Defendant met its burden). Having shifted the burden and found it must look outside the allegations of the complaint to assess if Defendant met its burden, the Court then looked to the facts considered by Defendant in finding no duty to defend. (*Id.*).

Last, as to the ambiguity of the policy, the Court will not revisit this question, as it was extensively litigated in front of the Court in briefing. *Backlund*, 778 F.2d

---

[4] As stated, the Court acknowledges its error in looking to the instant complaint rather than the underlying complaint in this portion of the order but finds that the underlying complaint satisfies Plaintiff's initial burden.

at 1388.   Additionally, Defendant incorrectly states that the Court "mistakenly characterized *Progressive's* argument at 'suggesting' that a 'public road' could refer to a public versus private road." (Doc. 35 at 13) (emphasis added).  The Court stated that *Plaintiff* suggested that a public road could be referring to a public versus a private road and rejected that interpretation as not reasonable.  (Doc. 27 at 16 n.3).

Accordingly, the Court finds it committed legal error in looking at the instant Complaint rather than the underlying complaint, but since that error does not change the outcome, the Court declines to exercise its jurisdiction to provide relief from judgment.

## III.   Attorney Fees

The Court next will consider whether Plaintiff is entitled to attorney fees, as it concluded in its initial order.

If the "insurer refuses to defend a claim and does so unjustifiably," which the Court determined was the case here, "the insurer is estopped from denying coverage and becomes liable for defense costs and judgments." *Tidyman's Mgmt. Servs. Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014) (hereinafter, *Tidyman's I*).  The Court interpreted "defense costs" in *Tidyman's I* to encompass attorney fees generally.  In re-reading *Tidyman's I*, "defense costs" appears to mean the cost for the insured to defend against the injured party in the underlying action, not attorney fees generally.

*See id.* at 1152.   Accordingly, the Court will grant relief from judgment on this portion of the order.

The Court now turns to Plaintiff's motion for attorney fees.   The parties disagree on whether Plaintiff—as an assignee of the insured's rights, rather than the insured himself—is entitled to attorney fees pursuant to the assignment, the amount of attorney fees and costs, and type of interest to which he is entitled.   The Court will address each in turn.

### A.   Entitlement to Attorney Fees

Plaintiff argues in his opening brief that the insurance exception to the American rule that each party generally bear its own fees and costs entitles him to attorney fees. (Doc. 30 at 2).   Defendant responds that the insurance exception does not apply because Plaintiff is "a third-party claimant." (Doc. 32 at 4).[5]   Defendant relies on Judge Christensen's opinion in *Wood v. Preferred Contractors' Insurance Company Risk Retention Group, LLC*, which held that an assignment of claims does not grant the assignee the right to attorney fees under the insurance exception to the American Rule.   (*Id.* (quoting 144 F. Supp. 3d 1166, 1172 (D. Mont. 2015))).   Plaintiff replied that the Montana Supreme Court's decision in *Newman*, which held that an assignee of the insured is entitled to attorney fees, controls. (Doc. 36 at 4

---

[5] Defendant also argues that neither of the other two exceptions to the American rule apply. (Doc. 32 at 2–3, 5–7).   Plaintiff does not dispute this, and the Court agrees.

(citing *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348 (Mont. 2013))). According to Plaintiff, *Wood* is incorrect because it relied on cases about third-party claimants, not assignees. (*Id.* at 5).

The Court agrees with Plaintiff the *Newman* controls and entitles Plaintiff to attorney fees. In *Newman*, a 16-year-old committed suicide at a "'tough love' academic facility" in Thompson Falls, Montana. 301 P.3d at 350. The girl's mother sued the facility, which settled with the plaintiff by assigning to the plaintiff its rights to $3 million in insurance coverage. *Id.* The plaintiff then sued the insurers to collect on the settlement and judgment, arguing that they breached their duty to defend and indemnify the facility. *Id.* The district court awarded the plaintiff the $3 million underlying judgment, attorney fees, and interest on the underlying judgment. *Id.* The insurers appealed, in part, the calculation of the attorney fees. *Id.*

On appeal, neither party disputed whether the plaintiff was entitled to attorney fees. *Id.* at 362. Even so, *Newman* discussed why this conclusion, even if agreed upon by the parties, was correct. *Id.* Relying on *Skauge v. Mountain States Telephone & Telegraph Co.*, the court explained that "'[w]hen there is an assignment of an entire claim there is a complete divestment of all rights from the assignor and a vesting of those same rights in the assignee.'" *Id.* (quoting 565 P.2d 628, 631 (Mont. 1997)). That bundle of rights includes attorney fees, if the insured would be entitled to attorney fees. *Id.*

*Newman* has not been overruled.  Also, other than *Wood*, *Newman*'s progeny affirm *Newman*'s holding, including another case authored by Judge Christensen 20 months before *Wood* and a Ninth Circuit case issued four months after *Wood*. *Newman v. United Fire and Cas. Co.*, No. CV 13-47-M, 2014 WL 1095745, at *2 (D. Mont. Mar. 19, 2014); *Dowson v. Scottsdale Ins. Co.*, 645 F. App'x 532, 533 (9th Cir. Mar. 23, 2016).  *See also Carolina Cas. Ins. Co. v. Keller Transp.*, No. DV 10-1133, 2014 WL 11369586, at *21 (Mont. Dist. Ct. Mar. 25, 2014).

In contrast, *Wood* is the only case the Court could find that discusses Montana law as applied to an assignee of an insured's rights and held that an assignee was not entitled to attorney fees.  *Wood* does not discuss *Newman*, nor do any cases cite to *Wood*'s holding on an assignee's entitlement to attorney fees.  Further, as Plaintiff explains, the cases on which *Wood* relies are inapplicable because they concern third-party claimants, not assignees.  *See Mountain West Farm Bureau Mut. Ins. Co. v. Brewer*, 69 P.3d 652, 655–661 (Mont. 2003) (describing its holding denying attorney fees under the insurance exception as "with regard to third-party beneficiaries"); *Jacobsen v. Allstate Ins. Co.*, 215 P.3d 649, 656 (Mont. 2009) (denying attorney fees to a third-party claimant because no fiduciary duty existed between claimant and insured).  These cases also predate *Newman*.

A Montana district court's 2016 decision underscores *Wood*'s erroneous conflation of the rights of a third-party claimant and of an assignee of an insured's

rights. *Associated Dermatology and Skin Cancer Clinic of Helena, P.C. v. Mountain West Farm Bureau Mut. Ins. Co.*, No. ADV-2013-690, 2016 WL 9738312 (Mont. Dist. Ct. Jan. 14, 2016). In *Associated Dermatology*, a third-party beneficiary of an insurance policy sought collection of attorney fees pursuant to the insurance exception to the American rule. *Id.* at *1. The party analogized to *Newman*. *Id.* at *2. The court rejected the party's request for fees on the grounds that the third-party beneficiary was not entitled to collect attorney fees under the insurance exception because "[n]o contractual fiduciary duty existed" between the party and the insurer. *Id.* The court explained that *Newman* was inapplicable because, in *Newman*, "[t]he insured had vested a right to recover attorney fees against its insurers, which it assigned to Newman." *Id.* Since no assignment occurred with the third-party beneficiary, the court held that the insurance exception did not apply. *Id.*

Reading *Newman* and its progeny together, Montana law seems to say that when an insured assigns its rights to a third party, the fiduciary duty between the insurer and the insured is assigned to the assignee. Thus, the assignee is no longer a "'stranger[] to the insurance contract.'" *Wood*, 144 F. Supp. 3d at 1172 (quoting *Brewer*, 69 P.3d at 661). If there are no limits on the assignment of rights, which the parties have indicated is the case here, then the fiduciary duty extends as far as it would between the insurer and the insured, including the duty to pay attorney fees

when the insurer breaches its duty to defend. Accordingly, Plaintiff is entitled to attorney fees as the assignee of the insured.

### B.   Amount of Fees

The parties next dispute the scope of the allowable attorney fees. Plaintiff argues he is entitled to $533,333 in attorney fees from the underlying and instant action pursuant to his one-third contingency fee agreement with his counsel and because it is a reasonable amount. (Doc. 36 at 7–8). Defendant argues that Plaintiff cannot impose the contingency fee agreement to the instant declaratory and breach of contract action because Plaintiff is entitled only to those rights the insured could assign. (Doc. 32 at 8–9). Since the insured did not have a contingency fee agreement with Defendant to assign, Plaintiff cannot assert such a right here. (*Id.* (citing *Newman*, 301 P.3d at 362)). Thus, according to Defendant, Plaintiff can only recover fees for a reasonable hourly rate and number of hours which the driver would have incurred in the instant action. (*Id.* at 9).

The Court agrees with Defendant that Plaintiff can only recover for attorney fees expended in the instant case, not the underlying litigation, and that Plaintiff cannot recover based on his contingency fee agreement. *Newman*'s discussion of the scope of attorney fees governs both principles. *Newman* held that the underlying action is a "separate tort action and the fee arrangement in that case does not transfer to this case." 301 P.3d at 362. *Newman* reasoned that the plaintiff only could bring

this case by virtue of the assignment of rights from the insured, and the plaintiff "assumes [the insured's] rights and nothing more." *Id.* *Newman* then declared that on remand, the district court had to calculate attorney fees based only upon what the plaintiff, as the insured's assignee, "would have been able to recover for her attorney's time and expenses *incurred in pursuing insurance coverage from the defendants.*" *Id.* (emphasis added).

Judge Christensen further affirmed *Newman*'s holding in a *Newman*-affiliated case. *United Fire and Cas. Co.*, 2014 WL 1095745 at *2–*3. He explained that the insurer was not in privity of contract with the plaintiff with respect to the contingency fee contract and therefore the insurer owed no fiduciary duty with respect to any contingency fee or attorney fees in the underlying action. *Id.* at *3. In contrast, since the assignee is in privity of contract with the insured via the assignment of the right to pursue insurance coverage, the assignee is entitled to attorney fees in the instant action. *Id.* at *3 ("As in *Newman,* the Court must base its award of attorney's fees 'upon what Newman, as [the insured's] assignee, would have been able to recover for her attorney's time and expenses incurred in pursuing coverage' from [the insurer].").

Thus, Plaintiff can recover a reasonable amount of fees expended in the instant action, not the underlying action and not based on the contingency fee agreement. The Court orders Plaintiff to resubmit a proposed fee award given this ruling.

C.    *Costs*

Plaintiff initially sought $8,006.89 in costs, which included costs incurred in the underlying suit against the driver. (Doc. 30 at 9). Defendant argued that Plaintiff was limited to the fees incurred in the instant case, totaling $452. (Doc. 32 at 9–10). Plaintiff conceded on reply that he was only entitled to the $452 in costs in the instant case. (Doc. 36 at 11).

Accordingly, Plaintiff is entitled to $452 in costs.

D.    *Interest*

The parties last dispute whether Plaintiff is entitled to interest pre-dating the judgment entered in this case. Plaintiff originally argued he was entitled to interest starting the day the confession of judgment was entered into. (Doc. 30 at 9). Defendant responded Plaintiff is only entitled to interest post-dating the judgment entered in this case and he failed to cite any caselaw to support his position that he was entitled to interest pre-dating the judgment in this case. (Doc. 32 at 10). On reply, Plaintiff asserted that *Tidyman's Managment Services Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA*, 378 P.3d 1182 (Mont. 2016) (hereinafter "*Tidyman's II*") provided for interest beginning on the date the final settlement was approved by the state district court. (Doc. 36 at 12).

The Court is inclined to agree with Plaintiff, though it recognizes that the caselaw is pretty thin on the matter and that *Tidyman's II* is not exactly on point. In

*Tidyman's I*, the Montana Supreme Court simultaneously reviewed the settlement amount agreed to by the insured and the assertion by the assignee of the insurer's breach of its duty to defend. 330 P.3d at 1144–45. The court affirmed the district court's finding of a breach of the insurer's duty to defend, reversed the judgment approving the settlement amount, affirmed the plaintiffs' entitlement to prejudgment interest from the day the stipulated settlement was approved, and remanded the case for a reasonableness hearing on the settlement amount. *Id.* at 1152, 1157. On remand, the district court found the stipulated judgment was not unreasonable. *Tidyman's II*, 378 P.3d at 1184. The insurer appealed again. *Id.*

As relevant here, the *Tidyman's II* court held that it incorrectly concluded in *Tidyman's I* that Plaintiffs were entitled to prejudgment interest from the day the stipulated settlement was approved by the district court because the *Tidyman's I* court had reversed the judgment approving the settlement. *Id.* at 1187. "Plaintiffs would have been entitled to postjudgment interest, not prejudgment interest, from the day the District Court approved the settlement, but only if we had affirmed the judgment amount." *Id.*

The Court's hesitation in finding *Tidyman's II* exactly analogous is the fact that the reasonableness of the settlement amount and the duty to defend were issues raised in the same court and in the same case. That is not the case here.

However, Plaintiff's contention that *Tidyman's II* more broadly stands for the proposition that interest accrues on the underlying judgment (so long as that underlying judgment is not disturbed) aligns with *Newman*'s ultimate order. In *Newman*, though the parties did not seem to dispute the district court's award of interest on the underlying judgment, the Montana Supreme Court explicitly affirmed the award. 301 P.3d at 363. Without caselaw to the contrary, the Court will order interest on the underlying judgment from the date that the state district court approved the settlement. *See Tidyman's II*, 378 P.3d at 1187; *Nielsen v. TIG Ins. Co.*, 442 F. Supp. 2d 972, 981–82 (D. Mont. 2006) (finding on different grounds than *Tidayman's II* that an award of interest on the underlying judgment is supported by Montana and Ninth Circuit caselaw).

## IV.   Conclusion

IT IS SO ORDERED that Defendant's Motion for Relief from Judgment (Doc. 33) is GRANTED as to the Court's holding in the original order on attorney fees and DENIED in all other respects.

IT IS FURTHER ORDERED that Plaintiff's Motion for Attorney Fees (Doc. 29) is GRANTED as to Plaintiff's entitlement to attorney fees and costs in the instant action and interest on the underlying judgment, and denied as to Plaintiff's entitlement to attorney fees and costs in the underlying action and based on the contingency fee agreement.

Within 30 days from the date of this order, Plaintiff shall submit a renewed motion for attorney's fees that allows the Court to determine a fee award based on reasonable hourly rates and hours spent litigating the instant action.

DATED the 17th day of May, 2024.

SUSAN P. WATTERS
U.S. DISTRICT JUDGE